UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

    v.

JOEL DEWBERRY, ET AL.,

    Defendants.

_____/

Case No. 19-cv-12218

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [#14]

### I. INTRODUCTION

On July 27, 2019, Plaintiff Joe Hand Promotions, Inc. filed its Complaint against Defendants Joel Dewberry, individually and as a corporate officer, and Next Gaming Lounge, LLC d/b/a Next Gaming Lounge (together, "Defendants") for their unauthorized and illegal receipt and exhibition of the Floyd Mayweather, Jr. vs. Conor McGregor broadcast. ECF No. 1. Defendants have failed to appear and otherwise defend the instant action.

Presently before the Court is Plaintiff's Motion for Default Judgment, which was filed on February 14, 2020. ECF No. 14. A hearing on Plaintiff's Motion was held on May 21, 2020. For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's Motion for Default Judgment [#14].

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

The instant action stems from Defendants' unlawful interception and display of the Floyd Mayweather, Jr. vs. Conor McGregor boxing match (the "Program"), which occurred on August 26, 2017. ECF No. 14, PageID.51. Plaintiff was granted the "exclusive right to commercially distribute" the Program. ECF No. 1, PageID.2. It licensed the Program to over 6,000 establishments across the country. *Id.* at PageID.3. Establishments could obtain authorization to show the Program to its patrons after proper payment of a commercial license fee to Plaintiff. *Id.*

Defendant Joel Dewberry is an "officer, director, shareholder, member or principal of the entity owning and operating" Next Gaming Lounge in Westland, Michigan. *Id.* at PageID.2. On August 26, 2017, there was an event at Next Gaming Lounge, which was advertised on the entity's Facebook and Instagram pages. ECF No. 14-6, PageID.95–97. Auditor Kathy Stein-Hazeldine visited Next Gaming Lounge and observed the Program being broadcasted to the various patrons who were present on the night of the boxing match. ECF No. 14, PageID.52. She declares in her attached affidavit that she paid a $5.00 cover charge. ECF No. 14-5, PageID.89. Further, she asserts that Next Gaming Lounge charged patrons $20 after 9:00 p.m. *Id.* Ms. Stein-Hazeldine explains that there were approximately thirteen patrons, including herself, watching the Program. *Id.* While she observed seven television sets, she asserts that the Program was only shown on one screen. *Id.*

2

Defendants did not contract with Plaintiff to show the Program. ECF No. 1, PageID.3. Instead, they took "affirmative steps to circumvent the commercial licensing requirement and unlawfully obtained the Program through an authorized cable signal, satellite signal, and/or internet stream." *Id.* Specifically, Plaintiff alleges that Defendants obtained the Program by willfully engaging in one or more of the following illegal acts: "(1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the Program in violation of the terms of their television service provider agreement." *Id.* at PageID.3–4. Plaintiff further asserts that Defendants "intentionally pirated the Program for the sole purpose of their own economic gain." *Id.* at PageID.4.

After "informal attempts to resolve this matter" with Defendants, Plaintiff filed its Complaint on July 27, 2019. ECF No. 14, PageID.50. In its two-count Complaint, Plaintiff seeks relief pursuant to the Federal Communications Act of 1934 ("FCA"), as amended, 47 U.S.C. §§ 553, 605 (Count I) and the Copyright Act of the United States, 17 U.S.C. § 101, *et seq.* (Count II). ECF No. 1, PageID.5–6. On November 4, 2019, Defendants were served with a Summons and copy of the Complaint. *See* ECF No. 10. Defendants did not answer or otherwise respond. ECF No. 14, PageID.49. Accordingly, on December 31, 2019, Plaintiffs requested that

the Clerk of the Court enter a default against each Defendant. ECF No. 11. The Clerk entered a default against each Defendant that same day. ECF No. 12.

Plaintiff now moves the Court to enter default judgment against Defendants. ECF No. 14. Plaintiffs seek an award of damages—both statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)—under the FCA (Count I). *Id.* at PageID.53. They also move to recover attorney's fees and costs and post-judgment interest. In support of its Motion, Plaintiff submits its own affidavit (ECF No. 14-2); a copy of its Commercial Licensing Agreement for the Program (ECF No. 14-3); a copy of the Rate Card for commercial establishments to purchase the right to show the Event (ECF No. 14-4); a piracy affidavit by Plaintiff's auditor Kathy Stein-Hazeldine (ECF No. 14-5); and a declaration by Plaintiff's attorney Kevin T. Kavanaugh (ECF No. 14-6).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits the entry of judgment against a defendant who has failed to plead or otherwise defend against an action. Fed. R. Civ. P. 55(b). To obtain judgment by default, the plaintiff must first request a default from the clerk pursuant to Rule 55(a). *Shepard Claims Servs., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986). "[E]ntry of a default against a defendant establishes the defendant's liability." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citation omitted).

4

Once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those relating to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995) (citation omitted). Rule 55(b)(2) provides that the Court "may" conduct a hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, a hearing is unnecessary if the evidence submitted is sufficient to support the damages request, or if the amount claimed may be discerned from definite figures in documentary evidence or affidavits. *McIntosh v. Check Resolution Serv., Inc.,* No. 10–14895, 2011 WL 1595150, at *4 (E.D. Mich. April 27, 2011) (citations omitted).

## IV. ANALYSIS

Plaintiff now seeks full and final judgment against Defendants pursuant to Rule 55(b)(2). While Plaintiff's Complaint includes claims under both the FCA and the Copyright Act, Plaintiff now solely moves for an award of damages under FCA. ECF No. 14, PageID.53 n.1. The Court will first address Defendants' liability under the FCA before addressing Plaintiff's request for an award of damages.

### A. Liability

While Plaintiff alleges violations of the FCA under Sections 605(a) and 553(a), courts have held that when a defendant is liable under both sections, a plaintiff may recover under only one section. *See J & J Sports Prods., Inc. v. Holbrook*, No. 17-11312, 2018 WL 4688934, at *2 (E.D. Mich. Sept. 28, 2018)

5

(citations omitted). Plaintiff has elected to pursue damages under 47 U.S.C. § 605. ECF No. 14, PageID.53.

> Section 605(a) of the FCA provides as follows:
>
> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception … to any person other than the addressee, his agent, or attorney ….

47 U.S.C. § 605(a). This section applies to satellite transmissions. *See Macomb Video Cipher II*, 985 F.2d 258, 260 (6th Cir. 1993).

The Sixth Circuit has adopted a three-part test to determine whether the defendant has violated § 605(a). *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914–917 (6th Cir. 2001). Courts look to whether (1) the plaintiff had a propriety interest in the communication; (2) the defendant intercepted that communication; and (3) the defendant unlawfully divulged the communication to its patrons. *Id.*; *see also Holbrook*, 2018 WL 4688934, at *3.

Here, the Court finds that Plaintiff has sufficiently demonstrated that it has a valid § 605(a) claim. First, the Commercial Licensing Agreement proves that Plaintiff had a propriety interest in the Program. ECF No. 14-3. Second, Defendants intercepted the Program on August 26, 2017. *See* ECF No. 14-5, PageID.89–90; ECF No. 14-6, PageID.95–97. Third, the Program was displayed to Defendants'

6

patrons without Plaintiff's consent. *Id.*; ECF No. 14-2, PageID.67–68; *see also* ECF No. 1, PageID.4.

The Court also determines that Defendant Joel Dewberry can be held vicariously liable in the instant matter. A defendant can be held liable in his individual capacity for a violation under § 605(a) if he had "the right and ability to supervise the violation." *Holbrook*, 2018 WL 4688934, at *3; *G & G Closed-Circuit Events, LLC v. Macedonian Enterprises, Inc.*, No. 14-12982, 2015 WL 3679863, at *2 (E.D. Mich. June 12, 2015) (citation omitted).

Defendant Mr. Dewberry is the sole owner of Next Gaming Lounge. ECF No. 14, PageID.61; ECF No. 1, PageID.2. He had the "right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities." ECF No. 14, PageID.61. By virtue of his default, Defendant Mr. Dewberry has admitted that he had both the right and ability to supervise the infringing activities and a direct financial benefit from such activities at Defendant Next Gaming Lounge on August 26, 2017. ECF No. 1, PageID.3. Defendant Mr. Dewberry is therefore liable for Defendant Next Gaming Lounge's § 605(a) violation.

Accordingly, Court will enter full and final judgment in favor of Plaintiff and against Defendants Joel Dewberry and Next Gaming Lounge. The Court finds that Plaintiff has established that it is an aggrieved party under the FCA. The Court also concludes that Defendants failed to answer or otherwise defend as provided by the

7

Federal Rules of Civil Procedure following proper service. The allegations in Plaintiff's Complaint are thus deemed admitted against Defendants.

Having established liability, Plaintiff must next establish damages.

### B. Damages

#### 1. Statutory Damages – Section 605(e)(3)(C)(i)(II)

A claimant who has established liability under 47 U.S.C. § 605(a) may elect between actual or statutory damages under § 605(e)(3)(C)(i). Here, Plaintiff requests $3,700.00 in statutory damages pursuant to § 605(e)(3)(C)(i)(II). Section 605(e)(3)(C)(i)(II) provides for a per-violation recovery "in a sum of not less than $1,000 or more than $10,000[.]" *Id.* The amount of statutory damages to be awarded is within the Court's discretion. *Id.* In calculating statutory damages, courts within the Sixth Circuit typically consider the price the defendant(s) would have had to have paid to obtain the right to receive and display a broadcast, as well as the plaintiff's cost to police its broadcasting rights in the area. *See J & J Sports Prods., Inc. v. Holbrook*, No. 17-11312, 2018 WL 4688934, at *3 (E.D. Mich. Sept. 28, 2018); *Joe Hand Promotions, Inc. v. Potopsky*, No. 1:10-cv-1474, 2011 WL 2648610, at *4 (N.D. Ohio July 6, 2011).

Here, Plaintiff submitted evidence demonstrating that Defendants should have paid $3,700.00 to show the Program on August 26, 2017. ECF No. 14-4, PageID.87. For establishments with maximum occupancies between 0 and 100 people, the

licensing fee would have been $3,700.00. *Id.* In her affidavit, Ms. Stein-Hazeldine explains that there were approximately thirteen patrons at Next Gaming Lounge, including herself, on August 26, 2017. ECF No. 14-5, PageID.89. Ms. Stein-Hazeldine asserts that Next Gaming Lounge can hold up to thirty-five patrons. *Id.* The commercial establishment therefore fits into alleged entity category for a rate of $3,700.00. According to Plaintiff, Defendants have not made any payments to compensate Plaintiff for the illegal broadcast nor have they made any attempts to reach a settlement. ECF No. 14, PageID.54.

In their instant Motion, Plaintiff presents several arguments to support their request for statutory damages. First, Plaintiff purports that it would be impossible to determine the full extent of its lost profits. ECF No. 14, PageID.55. Second, it argues that the Court should be mindful of the "difficulty in detecting such violations and the widespread problem of piracy[.]" *Id.* Third, Plaintiff discusses Defendants' increased proceeds from the sale of food and drinks sold to its patrons as an indirect result of their unlawful actions. *Id.* Fourth, Plaintiff argues that it has "lost and will continue to lose" in the future as authorized commercial establishments will be unable to compete with the "unfair and illegal competitive advantage that unauthorized establishments, like Defendants', unlawfully enjoy." *Id.* at PageID.55–56. Plaintiff emphasizes that its primary source of revenue is the sublicense fees which Defendants avoided in illegally broadcasting the Program. *Id.*

9

at PageID.56. Finally, Plaintiff purports that its "reputation and good will suffers" when an unauthorized commercial establishment engages in and benefits from an illegal broadcast. *Id.*

In light of the aforementioned arguments and Plaintiff's presented evidence, the Court finds that the requested statutory damages are just. Accordingly, the Court will grant Plaintiff its requested award of $3,700.00 in statutory damages for Defendants' violation of § 605(a) of the FCA.

### 2. Enhanced Damages – Section 605(e)(3)(C)(ii)

Plaintiffs also seek enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). ECF No. 14, PageID.57. This section permits the Court, in its discretion, to increase the award of damages up to $100,000 when it finds a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain …." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests enhanced damages of $18,500. ECF No. 14, PageID.59.

When considering enhanced damages, courts look to "the need to deter this unlawful activity," "the purpose of the legislation," and the need for judicial intervention to stop the unlawful behavior and "to compensate the aggrieved appropriately." *J & J Sports Prods., Inc. v. Tonita Restaurant, LLC*, No. 5:13-cv-382-REW, 2015 WL 9462975, at *4 (E.D. Ky. Dec. 28, 2015) (internal citation omitted). Courts examine a variety of factors, including "the number of patrons in

the establishment at the time the violation occurred, the seating capacity of the establishment, the various rates, including the residential rate, charged by the plaintiff for the viewing of the broadcast, and whether the defendant charged patrons a cover for the viewing or was likely to have obtained significant profits in another manner." *G & G Closed Circuit Events, LLC v. Port Bar, Inc.*, No. 14-12984, 2015 WL 144588, at *2 (E.D. Mich. Jan. 11, 2015) (internal citation and quotation marks omitted). "Deterrence, aiming to discourage future unlawful conduct through "substantial" financial penalization, for this and future defendants is an additional important factor." *Tonita Restaurant, LLC*, 2015 WL 9462975, at *4 (internal citation omitted).

"Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" *J & J Sports Prods., Inc. v. Holbrook,* No. X, 2018 WL 4688934, at *4 (E.D. Mich. Sept. 28, 2018) (quoting *J & J Sports Prods., Inc. v. Guzman*, 553 F.Supp.2d 195, 199 (E.D.N.Y. 2008)) (citations omitted). Some courts, including those within this District, have found that willfulness under § 605 is "established by the fact that an event is broadcast without authorization." *Holbrook*, 2018 WL 4688934, at *4 (internal citation omitted). "Other district courts have ruled that a court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages

11

based on allegations of willful conduct." *Tonita Restaurant, LLC*, 2015 WL 9462975, at *4.

Courts within this District, when presented with similar evidence, have concluded that a defendant's broadcast of a program without the plaintiff's authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain. *See, e.g.*, *J & J Sports Prods., Inc. v. Shaba*, No. 17-cv-11316, 2018 WL 329904, at *2 (E.D. Mich. Jan. 9, 2018) (finding willfulness and commercial advantage where a boxing match was illegally displayed on all televisions in a bar at half capacity); *J & J Sports Prods., Inc. v. SJV Investments and Steven Villneff*, No. 16-cv-12271, 2017 WL 218079, at *3 (E.D. Mich. Jan. 19, 2017). Here, the Court finds that Plaintiff also has shown willfulness and commercial advantage. Defendants displayed the Program on the largest television screen at their establishment. ECF No. 14-5, PageID.89. Additionally, Defendants charged a five-dollar cover charge. *Id.* In her affidavit, Ms. Stein-Hazeldine asserts that she was also asked to pay $20 after taking a seat at the establishment, but she told the employee she specifically noticed a five-dollar cover charge advertised on Facebook. *Id.* She further states that she paid another five dollars for beverages. *Id.* Ms. Stein-Hazeldine also estimated that thirteen patrons, including herself, were watching the Program. *Id.* The commercial establishment holds approximately thirty-five people. *Id.* The Court takes further notice that Defendants advertised the

12

Event on both their Facebook and Instagram pages. *See* ECF No. 14-6, PageID.95–97. Defendants' advertising, cover charge, and number of patrons in its small establishment demonstrates that broadcasting the Program was willful and for commercial gain.

Plaintiff does not allege that Defendants are repeat violators of the FCA. When considering enhanced damages, courts typically consider whether a defendant has repeatedly pirated event. *See Joe Hand Promotions, Inc. v. Pickett*, No. 5:15cv478, 2016 WL 3668162, at *5 (N.D. Ohio July 11, 2016). A defendant's history of past violations should serve as a mitigating factor in determining an award for damages. *Id.*; *see also Kingvision Pay-Per-View, LTD v. Lardo*, No. 10-cv-0059, 2010 WL 3463316, at *4 (W.D. Pa. Sept. 1, 2010). Indeed, "although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *J & J Prods., Inc. v. Strange Clouds Hookah Lounge, Inc.*, No. X, 2018 WL 783248, at *3 (E.D. Mich. Feb. 8, 2018) (quoting *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)). However, the Court takes notice that other courts within this District have determined that a defendant's conduct—even if only for a single violation—still warrants a finding of willfulness and commercial advantage. *See, e.g.*, *SJV Investments and Steven Villneff*, 2017 WL 218079, at *3 (finding that evidence of

advertising, cover charge, and multiple televisions demonstrates that broadcasting a program was willful and for commercial gain).

Based on the aforementioned evidence in this case, the Court determines that Defendants conduct was willful and that enhanced damages are warranted. However, the Court does not find that Defendants' conduct was so egregious as to warrant an award of $18,500 as sought by Plaintiff, which amounts to five times the amount of licensing fee for the Program. ECF No. 14, PageID.59. The Sixth Circuit gives district courts great discretion to calculate damages under § 605. *See National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 918 (6th Cir. 2001). Here, the Court concludes that a just reward requires multiplying the amount of statutory damages by two and a half times, for a total of $9,250. The Court believes that this amount is reasonable given that Defendants are not alleged to be repeat offenders, and is consistent with how other courts in this District have chosen to award enhanced damages. *See, e.g.*, *SJV Investments and Steven Villneff*, 2017 WL 218079, at *3 (determining that a "just reward requires doubling the amount of statutory damages"); *see also J & J Sports Prods., Inc. v. Holbrook*, No. 17-11312, 2018 WL 4688934, at *4 (E.D. Mich. Sept. 28, 2018) (awarding enhanced damages three times plaintiff's economic damages where defendants, unlike Defendants in the instant action, were repeat offenders); *see also J & J Sports Prods., Inc. v. McMillan*, No. 1:17-CV-947, 2019 WL 1517107, at *4 (W.D. Mich. Feb. 22, 2019)

14

(awarding enhanced damages three times plaintiff's economic damages where defendants were repeat offenders).

### 3. Attorney's Fees and Costs

Finally, Plaintiff seeks an award of reasonable attorney's fees and costs. ECF No. 14, PageID.53. Section 605 of the FCA permits an award of costs and reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii) ("The Court—shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Here, Plaintiff seeks an award of $1,500.00 in attorney's fees and $550.00 in costs, plus interest. ECF No. 14, PageID.62. In the instant Motion, Plaintiff's counsel only attached his own declaration as support for reasonable attorney's fees and costs. ECF No. 14-6, PageID.92. After the hearing and upon the Court's request, Plaintiff's counsel timely submitted a supplemental brief in support of the request for reasonable attorney's fees. *See* ECF No. 16.

While plaintiffs are generally entitled to recover attorney's fees, costs, interest, and expenses for their pre-and post-settlement agreement default collection efforts, recovery is limited to a "reasonable" award. 47 U.S.C. § 605(e)(3)(B)(iii). The Court must therefore determine whether the amounts Plaintiff's counsel seeks is reasonable. Here, Plaintiff's counsel asserts that his hourly rate for the instant matter is $250.00 per hour, "which is well within the range for attorneys with [his] experience based on the most recent economics of law survey." ECF No. 16,

PageID.102. The Court agrees that this hourly rate is reasonable and falls within the prevailing market rates for attorneys at similar levels. *See 2017 Economics of Law Practice: Attorney Income and Billing Rate Summary Report*, State Bar of Michigan https://www.michbar.org/file/pmrc/articles/0000153.pdf (last visited May 21, 2020).

Plaintiff's counsel explains that he billed two hours to draft and e-File the Complaint (ECF No.1). ECF No. 16, PageID.103. He also billed one hour to draft and e-File a Motion for Alternate Service (ECF No. 5). *Id.* Finally, Plaintiff's counsel also billed three hours to draft and e-File the instant Motion for Default Judgment (ECF No. 14). *Id.* This work comprises of the $1,500.00 sought in attorney's fees. The Court finds that such fees are reasonable and are well-supported by the attached evidence.

In addition to the requested fees, Plaintiff seeks an award of $550.00 in costs. ECF No. 14, PageID.62. In his attached declaration, Plaintiff's counsel explains that Plaintiff incurred costs of $400.00 to file and $150.00 to effectuate service in this action. ECF No. 14-6, PageID.93. The Court finds that such costs are reasonable and are well-supported by the attached evidence.

Accordingly, the Court finds that Plaintiff's counsel's request for attorney's fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) is reasonable.

## V. Conclusion

For the reasons articulated above, **IT IS ORDERED** that Plaintiff's Motion for Default Judgment [#14] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a judgment by default in favor of Plaintiff and against Defendants, jointly and severally, in the amount of **$12,950.00**, plus interest, consisting of statutory and enhanced damages pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii); and in the amount of **$2,050.00**, plus interest, for attorney's fees and costs incurred in this matter pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

**IT IS SO ORDERED**.

Dated: May 28, 2020

/s/Gershwin A. Drain
Hon. Gerswhin A. Drain
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 28, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager